## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MINISTER DOMINIQUE ALEXANDER, on behalf of himself, and on behalf of his minor children, K.A and J.A.; BISHOP GERALD WEATHERALL and PASTOR SHANNECA WEATHERALL, on behalf of themselves and on behalf of their minor children, T.B. and R.B.; REVEREND BRYANT X. PHELPS, on behalf of himself and on behalf of his minor child H.P.; PASTOR KEVIN HARRIS, on behalf of himself and on behalf of his minor child L.H.; TIARA COOPER, on behalf of herself and on behalf of her minor children, J.W. and M.W., and MINISTER AL-SHAHEED MUHAMMAD and ZAETA MUHAMMAD, on behalf of themselves and on behalf of their minor children, Q.M. and L.M. | CIVIL ACTION NO. 3:25-cv-1614 |
| PLAINTIFFS, | |
| v. | |
| MIKE MORATH, in his official capacity as the Texas Commissioner of Education; TEXAS EDUCATION AGENCY, DALLAS INDEPENDENT SCHOOL DISTRICT BOARD; DESOTO INDEPENDENT SCHOOL DISTRICT BOARD; and LANCASTER INDEPENDENT SCHOOL DISTRICT BOARD, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| DEFENDANTS. | |

## COMPLAINT

1.      Texas Senate Bill No. 10 ("S.B. 10" or the "Act"), requires public schools to post a state-approved version of the Ten Commandments in every classroom.  Texas has nearly six (6) million students in about 9,100 public elementary and secondary schools across the state. The children who attend these schools and their families follow various faiths and religions, or do not practice any religion at all. However, under S.B. 10, every one of these students will be forcibly

subjected to religious mandates, every single school day, including: "I AM the LORD thy God"; "Thou shalt have no other gods before me"; "Thou shalt not take the Name of the Lord thy God in vain"; and "Remember the Sabbath day, to keep it holy." This is wholly inconsistent with the fundamental religious-freedom principles that upon which our nation was founded.

2.      There is no longstanding tradition of permanently displaying the Ten Commandments in public-school classrooms in Texas or the United States more generally. For almost half a century, it has been well settled that the First Amendment forbids public schools from posting the Ten Commandments in this manner. *See Stone v. Graham*, 449 U.S. 39 (1980) (striking down Kentucky law requiring a version of the Ten Commandments to be posted in public-school classrooms). Accordingly, no federal court has upheld any display of the Ten Commandments by a public school.

3.      S.B. 10 violates this binding precedent and the Establishment Clause and Free Exercise Clause of the First Amendment. Permanently posting the Ten Commandments in every Texas public-school classroom unconstitutionally pressures students into religious observance, reverence, and adoption of the state's mandated religious scripture.

4.      Additionally, S.B. 10 substantially interferes with and rights of parents to direct their children's religious education and upbringing. The Due Process Clause of the Fourteenth Amendment protects fundamental parental rights. Courts have long held that "the natural right existing between parents and their children is of constitutional dimensions. *In re Pensom*, 126 S.W.3d 251, 254 (Tex. App.-San Antonio 2003, no pet.); *Wiley v. Spartan*, 543 S.W.2d 349, 352 (Tex. 1976). As the U.S. Supreme Court recognized almost a century ago, "[t]he child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 ,(1925). Consistent with this recognition, the Court has held that the

interest parents possess with regard to their children is a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment. · *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

5.      The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV§ 1. In addition to guaranteeing fair process, the Court has held that this Clause includes a substantive component that forbids the government from infringing upon "certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993).

6.      Furthermore, the S.B. 10's mandatory posting of the Christian religion's "Ten Commandments" is a clear violation of the Texas State Constitution, which specifically states:

> "No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent. No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship. TX. CONST. Art.1, Sec. 6.

7.      For these reasons, Plaintiffs seek a declaratory judgment that the Act is unconstitutional and preliminary and permanent injunctive relief to prevent Defendants from (i) implementing rules and regulations in accordance with the Act, (ii) otherwise seeking to enforce the Act, and (iii) displaying the Ten Commandments in any public-school classroom.

## JURISDICTION & VENUE

8.      This action arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3).

9.      The Court is authorized to award the declaratory and injunctive relief requested

by Plaintiffs pursuant to 28 U.S.C. §§ 2201 and 2202.

10.    Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Texas. Plaintiff, Minister Dominique Alexander, Bishop Gerald Weatherall, Pastor Shanneca Weatherall, Reverend Bryant X. Phelps, Pastor Kevin Harris, Tiara Cooper and Al-Shaheed Muhammad and Zaeta Muhammad reside in this district, and their minor children attend public schools in this district. Defendant Mike Morath, Texas State Commissioner of Education, conducts his official duties in this district. In addition, defendants Dallas Independent School District Board; Desoto Independent School District Board; and Lancaster Independent School District Board are in this district. Accordingly, the actions to administer, implement, and enforce the Act by the Defendants that give rise to the claims herein will necessarily occur in large part within this district.

**PARTIES**

**A.    Plaintiffs**

11.    Minister Dominique Alexander, brings this suit on behalf of himself, and on behalf of his minor children, K.A., J.A.[1]  K.A. and J.A. are enrolled in a public school in the Dallas Independent School District.  K.A. and J.A. will attend school in the same District in 2025. Minister Dominique Alexander and his children are domiciled, and his children attend school, in Dallas, TX within the Northern District of Texas.

12.    Bishop Gerald Weatherall and Pastor Shanneca Weatherall, bring this suit on behalf of themselves and on behalf of their minor children, T.B. and R.B.; minor children.  T.B. and R.B. are enrolled in public schools in the Desoto Independent School District.  T.B. and R.B will attend school in the same District in 2025.  Bishop Weatherall and Pastor Weatherall and their children are domiciled, and their children attend school, in Desoto, TX within the Northern District of Texas.

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(3), all minor Plaintiffs are identified by their initials.

13.    Reverend Bryant X. Phelps, on behalf of himself and on behalf of his minor child H.P.; H.P. will attend school in the same District in 2025.  Reverend Phelps and his child are domiciled, and his child attends school, in Dallas, TX within Northern District of Texas.

14.    Pastor Kevin Harris, bring this suit on behalf of himself and on behalf of his minor child L.H.  L.H. is enrolled in a public school in the Lancaster Independent School District.  L.H. will attend school in the same District in 2025.  Pastor Harris and his child are domiciled, and his children attend school, in Lancaster, TX within Northern District of Texas.

15.    Tiara Cooper, bring this suit on behalf of herself and on behalf of her minor children, J.W. and M.W.  J.W. and M.W. are enrolled in a public school in the Dallas Independent School District.  J.W. and M.W. will attend school in the same District in 2025.  Tiara Cooper and her children are domiciled, and her children attend school, in Dallas, TX within Northern District of Texas.

16.    Minister Al-Shaheed Muhammad and Zaeta Muhammad bring this suit on behalf of themselves and on behalf of their minor children, Q.M.. and L.M.; minor children.  Q.M.. and L.M. are enrolled in public schools in the Desoto Independent School District.  Q.M.. and L.M. will attend school in the same District in 2025.  Al-Shaheed Muhammad and Zaeta Muhammad and their children are domiciled, and their children attend school, in Desoto, TX within the Northern District of Texas.

**B. Defendants**

17.    Defendant Mike Morath is sued in his official capacity as the Texas State Commissioner of Education for the Texas Education Agency. As the Commissioner of Education, Defendant Morath serves as the administrative head of the Texas State Department of Education and is statutorily responsible for administering and implementing all policies and programs adopted by the Texas Education Agency. All employees of the State Department of Education are

under Defendant Morath's direction and control.

18.     Pursuant to S.B. 10, the Texas State Department of Education, and therefore Defendant Morath, are responsible for identifying appropriate resources to ensure that public elementary and secondary schools in Texas comply with the Act.

19.     Defendant Mike Morath is the Texas Commissioner of Education who directs the TEA. He may be served at 1701 N. Congress Ave., Austin, Texas 78701. Defendant Morath is responsible for the implementation of all state laws that fall under the jurisdiction of the State Board of Education and Texas Education Agency, which includes S.B. 10.  Implementation of S.B. 10 violates the First Amendment to the United States Constitution.

20.     Defendant Texas Education Agency ("TEA") is a state agency of the State of Texas that monitors school Texas' public school districts for compliance with federal and state guidelines. Pursuant to S.B. 10, the Texas State Legislature has given TEA the authority to adopt rules and regulations to ensure the implementation of the Act.  TEA may be served at 1701 N. Congress Ave., Austin, Texas 78701.

## FACTUAL ALLEGATIONS

21.     On June 20, 2025, Texas governor Greg Abbott signed into law S.B. 10, an act requiring the display of the Ten Commandments in schools. The Act became was signed on by Governor Greg Abbott on June 22, 2025, and will become effective on September 1, 2025.

22.     The Act requires each public-school governing authority in Texas to display the Ten Commandments in every classroom in every school under its jurisdiction. It applies to public elementary, secondary, charter, and post-secondary schools and educational institutions.

23.     The Act requires that the Ten Commandments be displayed "in a conspicuous place" on a poster or framed document that is at least sixteen inches by twenty inches. The text of the Ten Commandments must printed "in a size and typeface that is legible to a person with

average vision from anywhere in the classroom in which the poster or framed copy is displayed."

24.    As prescribed by the Act, the classroom display of the Ten Commandments must state:

The Ten Commandments
I AM the LORD thy God.
Thou shalt have no other gods before me.
Thou shalt not make to thyself any graven images.
Thou shalt not take the Name of the Lord thy God in vain.
Remember the Sabbath day, to keep it holy.
Honor thy father and thy mother, that thy days may be long upon the land which
the Lord thy God giveth thee.
Thou shalt not kill.
Thou shalt not commit adultery.
Thou shalt not steal.
Thou shalt not bear false witness against thy neighbor.
Thou shalt not covet thy neighbor's house.
Thou shalt not covet thy neighbor's wife, nor his manservant, nor his
maidservant, nor his cattle, nor anything that is thy neighbor's.

25.    The Act does not provide permission for the display of any other document with the Ten Commandments.

26.    The Act requires public schools to acquire the Ten Commandments displays either by (1) accepting donated displays, or (2) may use district funds to purchase compliant displays.

27.    Texas Education Agency is responsible for adopting rules and regulations in accordance with the Administrative Procedure Act to ensure the proper implementation" of the Act.

28.    Under the Act, no public school is exempt from this requirement and must post the state- approved version of the Ten Commandments in every classroom beginning with the 2025-2026 school year.

29.    The displays will be permanent and year-round; the Act does not provide for a time limit on the displays.

30.    The Act requires the displays to be placed in every classroom, regardless of the

subject matter taught.

31.    The Act requires that the Ten Commandments displays be posted in classrooms without regard to the grade level and literary comprehension of students. For example, the Act requires the Ten Commandments displays to be hung in both kindergarten and high school.

### SENATE BILL 10 OFFICIALLY APPROVES AND PRESCRIBES A SPECIFIC VERSION OF THE TEN COMMANDMENTS, WHICH MAY NOT ALIGN WITH THE BELIEFS OF MANY TEXANS

Senate Bill 10 (S.B. 10 is not religiously neutral, as it mandates the display of a specific version of the Ten Commandments in every public-school classroom. This requirement inherently takes a theological stance on the correct content and meaning of the scripture.

Many Texans, including those who are not religious or who adhere to different faith traditions, do not subscribe to the specific text or tenets of the Ten Commandments as presented in S.B. 10. For instance, followers of Hinduism, Buddhism, and Taoism generally do not consider the commandments to be part of their belief system, and some Christians, such as Jehovah's Witnesses, do not view them as authoritative. Even within faith traditions that recognize the Ten Commandments, various versions exist depending on denomination or biblical translation.

The version mandated by S.B. 10 mostly aligns with a Protestant rendition but does not match any version found in the Jewish tradition, notably omitting key language and context from the Torah. Furthermore, it does not match the version followed by most Catholics, as it includes a prohibition against "graven images" which could be offensive given the role of iconography in the Catholic faith.

Given these considerations, the mandatory, religiously preferential displays required by S.B. 10 do not serve a compelling governmental interest, nor are they narrowly tailored to any such interest.

### THE DISPLAYS MANDATED BY SENATE BILL 10 COULD COERCE STUDENTS,

**INCLUDING THE MINOR PLAINTIFFS, INTO RELIGIOUS OBSERVANCE, REVERENCE, AND ADOPTION OF THE STATE'S OFFICIAL RELIGIOUS SCRIPTURE.**

32.     Texas Education Code  § 25.085 requires that minor children "attend school each school day for the entire period the program of instruction is provided."

33.     Under Texas law, students from age six to eighteen must attend school at least ninety percent 90% of scheduled school days per year. Texas Education Code  § 25.085

34.     Consistent with these statutory mandates, more than 5.5 million children are enrolled in Texas' public schools across the state.

35.     The religious diversity within Texas public schools encompasses a wide array of faiths, including various denominations, branches, and sects. Additionally, many students and families do not adhere to any faith and value their right to be non-religious as much as those who practice a religion.

36.     Given this diversity, many students and families, including some of the Plaintiffs, do not subscribe to the Ten Commandments at all.

**S.B. 10 VIOLATES THE ESTABLISHMENT CLAUSE AND SERVES NO COMPELLING GOVERNMENT INTEREST.**

37.     It has long been established that a compelling government interest exists in complying with constitutional obligations, such as not violating the Establishment Clause. This principle dictates that any attempt to regulate expression based on its content will require a showing of a compelling governmental interest to justify such regulation.

38.     Under the context of S.B. 10, it is concerning that each child attending school will be compulsorily subjected to the state's official version of the Ten Commandments for nearly every hour they are in school. This raises significant questions regarding the state's adherence to its constitutional obligations, particularly concerning the Establishment Clause.

39.     Texas law mandates that "a child who is at least six years of age… and who has

not yet reached the child's 19th birthday shall attend school." *See* Texas Education Code § 25.085. Each school district is required to operate for at least 75,600 minutes (equivalent to 180 seven hour days). Thus, cumulatively, for students entering the Texas public-school system at age six, S.B. 10 will subject them to the state's preferred religious propaganda for approximately 15,000 hours.

40.    The Act not only requires that public schools post the displays in every classroom – with no exceptions – but, as noted above, it also requires that the Ten Commandments be the displayed in a "conspicuous place" and it must be a poster or framed document, "at least 16 inches wide and 20 inches tall." And  the text of the commandments must  be printed "in a size and typeface that is legible to a person with average vision from anywhere in the classroom" Texas Education Code § 1.0041(b).

41.    These requirements are intended to ensure that students are more likely to observe, absorb, accept, and follow the religious text of the Ten Commandments.  For example, during the House Education Committee's hearing on April 30, 2025, Representative Candy Noble, the primary sponsor of the bill, emphatically declared "Our classrooms are crying out for moral guidance."  She also explained her religious beliefs: "Government was not made for man.  It was made by God, for man… and we would love for our school children to understand that God gave us the right and privilege of governing. And I love that."

42.    When asked if she believes in separation of church and state, Representative Noble refused to acknowledge that the U.S. Constitution provides a clear separation of church and state. Instead, she responded "That's an interesting question that has been debated a great deal.  But what I'm going to say to you is I'm going to quote some of our earliest forefathers. Do you think that our forefathers when they wrote these words were thinking about a separation?"

43.    Further during the hearing, when Representative Talarico stated "I believe we have

established that our founding fathers wanted a separation of church and state" Noble interrupted and vehemently proclaimed "I did not establish that. I absolutely did not establish that.  I disagree with that."

44.    During a House Floor Debate on May 24, 2025, Rep. Candy Noble, stated "It is incumbent on all of us to follow God's law and I think we would all be better off if we did."

45.    One thing that the sponsor of H.B. 10 did acknowledge is that "there are over 900 versions of the Ten Commandments, in English alone."  However, as a result of the displays mandated by S.B. 10, students who do not subscribe to the state's official version of the Ten Commandments – including minor-child Plaintiffs – will be pressured into religious observance, reverence, and adoption of this particular government selected religious scriptural text.

46.    The state mandated indoctrination under S.B. 10 fails to present a compelling government interest.  And even if it had, the required display of S.B. 10 fails the test of being narrowed tailored.

### PLAINTIFFS OBJECT TO, AND WILL BE HARMED BY, THE RELIGIOUS DISPLAYS MANDATED BY S.B. 10.

**A.  Minister Dominique Alexander and his minor children**:

47.    Plaintiff Minister Dominique Alexander is a Christian minister and social justice advocate. He has two minor children, K.A and J.A.  They are all members of a local Christian church and attend regularly.

48.    On behalf of himself and on behalf of his minor children, Minister Alexander objects to, and Minister Alexander, regarding his profound concerns about Senate Bill 10 (S.B. 10). Minister Alexander finds this legislation deeply offensive because the overtly religious classroom displays mandated by the law will promote and forcibly subject his children to religious scripture in a manner that he believes violates his and his children's civil rights. He views these displays as religiously coercive, usurping his parental role in directing his children's

religious education, values, and upbringing. Minister Alexander's Christian beliefs and commitment to civil rights compel him and his children to be welcoming and to value everyone's experience and backgrounds, and to avoid elevating some religions over others. He enrolled his children in public school specifically to ensure they receive a secular, religiously unbiased education and have the opportunity to interact with and learn from peers from diverse cultural and faith traditions.

49.     The ability to direct and guide his children in matters of faith and protect their ability to undertake a free and responsible search for truth and meaning is an essential aspect of Minister Alexander's parental rights and religious exercise. S.B. 10 will significantly interfere with and burden his ability to carry out this religious exercise, and he considers this burden to be substantial. For instance, Minister Alexander believes that some of the text within S.B. 10's version of the Ten Commandments, treats some people as chattel. Thus, as a spiritual matter, it is critical that this text be presented to his children by him or through the family's church, to avoid his children receiving this harmful message.  He is concerned that by posting this text, the state sends the message to his children that slavery is acceptable, which directly violates core spiritual beliefs and civil rights that Minister Alexander teaches his children to value.

50.     Additionally, because S.B. 10 requires the commandments to be permanently posted in every classroom, they become unavoidable. Given that these displays are not connected to the subject matter being taught, Minister Alexander believes they will send a message, in conflict with his religious and social justice and civil rights beliefs, that the posted text is not only the "correct" or superior version of religious doctrine, but also that the Ten Commandments, as set forth in the display, constitute official rules that his children and their peers must follow.

51.     Furthermore, Minister Alexander believes that the religious displays required by S.B. 10 send a message of religious intolerance, which also conflicts with his family's personal

civil rights and spiritual beliefs, implying that anyone who does not believe in the state's official religious scripture is an outsider and not fully part of the community.

52.    He is concerned that, due to these mandated religious displays, his children will be pressured to observe, appreciate, and adopt the state's preferred religious doctrine and to suppress the expression of their own religious backgrounds and views at school. This religious coercion will harm his children spiritually and substantially interfere with, impede, and burden their ability to conduct a free and responsible inquiry for truth and meaning and to decide, for themselves, what to believe when it comes to matters of faith.

**B.  Bishop Gerald Weatherall and Pastor Shanneca Weatherall, and their minor children**

53.    Plaintiffs Bishop Gerald Weatherall and Pastor Shanneca Weatherall are ordained ministers in the Christian faith. They are raising their minor children, T.B. and R.B., in a non-denominational sect of the Christian religion. On behalf of themselves and T.B. and R.B., they object to, and are offended by, S.B. 10 because it will forcibly subject T.B. and R.B. to school displays of the Ten Commandments in a manner that violates the family's religious beliefs and practices and will usurp their parental roles in directing T.B. and R.B.'s religious education, religious values, and religious upbringing.

54.    The ability to direct and guide their child's spiritual development is an essential aspect of Bishop Weatherall's and Pastor Weatherall's religious exercise. For the reasons discussed below, S.B. 10 will significantly interfere with and burden their ability to carry out this religious exercise. This burden is substantial.

55.    Bishop Weatherall and Pastor Weatherall strongly believe that scriptural matters and questions, including which version of scripture is correct and what it means, are far too sacred to place in the hands of government officials. They believe that these are issues that must be reserved for faith communities. This belief is rooted in the understanding that civil magistrates

should not interfere with the administration of God's Word or misappropriate God's authority. Yet, that is exactly what the state has done here by placing its stamp of approval on one particular version of the Ten Commandments and mandating that this version be posted in every public-school classroom. In so doing, S.B. 10 and the displays it requires will send a message to all students, including T.B. and R.B, that the government holds religious authority.

56.    Bishop Weatherall and Pastor Weatherall believe that the reservation of theological matters to faith communities is especially important when it comes to youth religious education, including for their own children. Receiving and navigating scripture, such as the Ten Commandments, within the context of their faith is critical to ensuring that T.B. and R.B.'s understanding of the commandments aligns with their Christian teachings and values. For example, as pastors trained in biblical study and interpretation, Bishop Weatherall and Pastor Weatherall look to the faith tradition out of which scripture was born, and the version of the Ten Commandments mandated by S.B. 10 effectively erases that critical context by disregarding and dismissing text that is central to its origin.

57.    In addition, the family's faith strongly teaches that all people are equal in the eyes of God and should be treated as such. However, the text of the Ten Commandments mandated by S.B. 10 includes language that, on its face, is contrary to this value—effectively treating women and others ("maidservant[s]" and "manservant[s]") as property. To avoid this harmful message, the language must be introduced to T.B. and R.B. by their parents and church within the broader framework of their religious doctrine and belief.

58.    Moreover, the state's decision to mandate the display of a specific version of the Ten Commandments in public schools sends the message to T.B. and R.B. and other students that those who do not believe in this official version are not as worthy as those who do, contrary to the family's religious principles, which value a multicultural and diverse society and do not base

the worthiness of people on their faith or lack thereof.

59.     This message of inequality, like the others discussed above, will be virtually inescapable for T.B. and R.B., as the displays will be posted permanently in every classroom throughout the rest of T.B. and R.B.'s public-school education.

60.     The Ten Commandments displays posted in T.B. and R.B.'s classrooms will not only interfere with and undermine Bishop Weatherall's and Pastor Weatherall's ability to guide T.B. and R.B.'s religious education, but they will also create pressure for T.B. and R.B. to accept and believe – contrary to the family's faith – the overtly religious messages conveyed by them.

61.     Bishop Weatherall stands firmly against the State of Texas' attempt to impose a government-mandated version of faith in our schools. The pulpit is sacred – not a platform for political propaganda.  Bishop Weatherall believes in the autonomy of the Church and the divine authority of the Holy Spirit to guide the hearts and minds of believers, not the coercive hand of the state.  He has expressed that he will not allow his children – or any child – to be indoctrinated by a version of religion that has been politicized, manipulated, and stripped of its spiritual essence. "The government should govern; the Church should minister. Anything else is a threat to the soul of both our democracy and our faith."

62.     Finally, as ministers in the community, Bishop Weatherall and Pastor Weatherall work with others in interfaith contexts. In favoring one set of religious language and beliefs over others, S.B. 10 will help create a climate in Dallas – and, across Texas – that is hostile to, or dismissive of, people of other faiths, interfering with the exercise of these pastoral religious responsibilities.

**C.  Reverend Bryan Phelps and his minor child**

63.     Plaintiff Reverend Bryan Phelps is an ordained minister in the Methodist denomination of Christian faith. He is the parent a minor child, H.P., who attends a public school

in . He is raising his child with his beliefs in the Christian tradition. On behalf of himself and on behalf of his child, Reverend Phelps objects to, and is offended by, S.B. 10 because it promotes, and will forcibly subject the children to, religious displays in a manner that violates the family's religious beliefs and practices. It will also usurp Reverend Phelps' parental role in directing his child's religious education, religious values, and religious upbringing.

64.     The ability to direct and guide his child's spiritual development is an essential aspect of Reverend Phelps' religious exercise. For the reasons discussed below, S.B. 10 will significantly interfere with and burden his ability to carry out this religious exercise. This burden is substantial.

65.     As a minister and parent, Reverend Phelps believes that scripture, including the Ten Commandments, is best understood – especially by children – when presented within the context of the family's church and particular faith tradition. This ensures that a child's introduction to the religious text and comprehension of it aligns with the family's religious beliefs.

66.     Further, S.B. 10 represents an intrusion of civil authority into matters of faith, sending the message to Reverend Phelps, his child and the community that the public-school system and the government more generally not only possess religious authority, but that this authority is greater than God's, in direct contradiction of his family's beliefs.

67.     The Ten Commandments displays posted in the his children's classrooms will not only interfere with and undermine Reverend Phelps's ability to guide their spiritual development, but they will also pressure the children to accept and believe the overtly religious messages conveyed by the displays, including that the state has authority over theological questions and scripture and that authority is greater than God's, that one denomination or faith system is preferable to others, and that those who do not adhere to it are lesser in worth and status. And the

children will further be pressured to suppress expression, especially in school, of their own religious beliefs on these issues and other religious questions or concerns raised by the religious displays.

**D. Tiara Cooper, on behalf of herself and on behalf of her minor children, J.W. and M.W.**

68.     Plaintiff Tiara Cooper, bring this suit on behalf of herself and on behalf of her minor children, J.W. and M.W., objects to, and is offended by, S.B. 10 because the displays it mandates will promote, and forcibly subject her children to, religious scripture to which she and her children may not subscribe. In so doing, the displays will also usurp Ms. Cooper's Fourteenth Amendment right to direct her children's religious upbringing.

69.     Ms. Cooper is a Christian. However, while she is raising her children with traditional Christian values, she educates her children regarding other religions.  Ms. Coooper values her family's right to adopt their own religious beliefs respects others' choices to do the same. While Ms. Cooper and her children generally believe in most of the basic tenets of the Ten Commandments, she does not agree with the language of specific version that S.B. 10 mandates. Ms. Cooper seeks to allow her children to independently develop their own decisions on religious matters and does not want their public school to interfere with this decision.

70.     Ms. Cooper believes that S.B. 10 and the required Ten Commandments displays will directly interfere with and substantially burden and undermine her ability to raise J.W. and M.W., in her family's religious tradition of allowing them to choosing to worship God by their own choice, instead of forcing her children to be subjected to displays of specific doctrine in every classroom.

71.     Ms. Cooper will have to undertake additional burdens because of S.B. 10 and the displays that will be posted in her children's classrooms. Ms. Cooper will feel compelled to discuss the Ten Commandments with J.W. and M.W. if the displays will be put in their

classrooms. She does not wish to be forced to have this sensitive conversation with J.W. and M.W. about the Ten Commandments given their ages. She also opposes posting the mandated language of S.B. 10 because she believes that it addresses age-inappropriate religious content. For example, Ms. Cooper does not desire that her minor children to be instructed by their school about the biblical conception of adultery.

72.     Ms. Cooper believes that the religious displays mandated by S.B. 10 will increase the pressure on J.W. and M.W. to suppress expression of their own nonreligious background and nonreligious views at school as well as pressure them to observe, venerate, and adopt the state's preferred religious doctrine.

**E.  Minister Al-Shaheed Muhammad and Zaeta Muhammad,** and their minor children, Q.M. and L.M.

73.     Plaintiffs Minister Al-Shaheed Muhammad and Zaeta Muhammad belong to the Nation of Islam and are intentionally and actively raising their minor children, Q.M. and L.M., in the Nation of Islam tradition. The family regularly attends mosque, where Mr. Muhammad is a minister in the Nation of Islam. Minister Muhammad and his wife Zaeta have chosen to educate Q.M. and L.M. in the public-school system because of their strong belief in separating their children's secular education from their religious education.  They desire to be heavily involved in educating Q.M. and L.M. in their religious faith to ensure that it is consistent with their Islamic belief and practice. Both Q.M. and L.M. attend mosque weekly for religious education.

74.     On behalf of themselves and on behalf of their minor children, Q.M. and L.M. Minister Sha Heed and Zaeta Muhammad object to, and are offended by, S.B. 10 because, among other reasons, it forcibly imposes on Q.M. and L.M. religious classroom displays that are, in some ways, contrary to the family's Islamic faith. Specifically, they object to the display of the first four commandments mandated by S.B. 10 in their children's classrooms. Minister Sha Heed and Zaeta Muhammad view these as religious obligations that are contrary to their

own views and beliefs and those of Q.M. and L.M.

75.    In so doing, the displays are likely to result in religious coercion of Q.M. and L.M. and usurp Minister Sha Heed and Zaeta Muhammad's parental roles in directing T.S.'s religious education, religious values, and religious upbringing.

76.    The official version of the Ten Commandments set forth in S.B. 10 and the display of this state-selected religious scripture are religiously offensive to Minister Sha Heed and Zaeta Muhammad given that they use text from a religion which their family does not subscribe.  The "Commandments" command that Q.M. and L.M. acknowledge and worship a Christian God.

77.    The ability to direct and guide their child in matters of faith is an essential aspect of Minister Sha Heed and Zaeta Muhammad's religious exercise. S.B. 10 will significantly interfere with and burden their ability to carry out this religious exercise. This burden is substantial.

78.    Specifically, for the reasons discussed above, Minister Sha Heed and Zaeta Muhammad believe that forcibly subjecting Q.M. and L.M. to the displays mandated by S.B. 10 will undermine and interfere with their ability to instill in Q.M. and L.M. what it means to specifically belong to the Nation of Islam.  And their ability to introduce and teach the tenets of the Nation of Islam to Q.M. and L.M. in a manner that comports with other important Nation of Islam beliefs.

79.    Minister Sha Heed and Zaeta Muhammad also believe that the displays will create confusion for Q.M. and L.M. by wrongly suggesting that the state-selected version of the Ten Commandments is the "correct" or authoritative version of Godly text and will pressure Q.M. and L.M. to observe, venerate, and adopt the state's preferred religious beliefs and practices instead of Islam.

**80.**    They also believe that, because of the displays, Q.M. and L.M. who were, on

information and belief, some of just a few Nation of Islam students in their classes last year—will likely face situations in which Q.M. and L.M. feel pressured to suppress expression of their own Nation of Islam background and beliefs.

## COUNT I

### VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

81.    Plaintiffs re-allege and incorporate by reference all the above paragraphs as if they were fully set forth herein. The Establishment Clause of the First Amendment to the United States Constitution guarantees that "Congress shall make no law respecting an establishment of religion."

82.    In *Stone v. Graham*, the Supreme Court struck down a statute similar to S.B. 10, holding that posting the Ten Commandments in public-school classrooms violates the Establishment Clause of the First Amendment. 449 U.S. at 41-42. *Stone* remains binding precedent, and S.B. 10 is, therefore, unconstitutional.

83.    By mandating that this state-sanctioned version of the Ten Commandments be displayed in every public-school classroom in Texas, S.B. 10 impermissibly prefers and imposes a set of distinct religious norms on Texas's public-school children, including the minor-child Plaintiffs.

84.    As a result of the Ten Commandments displays mandated by S.B. 10, Texas students—including minor-child Plaintiffs—will be unconstitutionally coerced into religious observance, veneration, and adoption of the state's favored religious scripture, and they will be pressured to suppress their personal religious beliefs and practices, especially in school, to avoid the potential disfavor, reproach, and/or disapproval of school officials and/or their peers.

85.    In addition, by mandating that one version of the Ten Commandments be displayed in public educational institutions and prescribing an official religious text for

schoolchildren to venerate, S.B. 10 adopts an official position on religious matters, violating the Establishment Clause's prohibition against taking sides in questions over theological doctrine and violating the "clearest command" of the Establishment Clause that "one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

86.     There is no longstanding historical practice or tradition of prominently and permanently displaying any version of the Ten Commandments in American public-school classrooms. On the contrary, the Supreme Court unambiguously held in *Stone* that such a practice is proscribed by the Constitution.

87.     By implementing S.B. 10, Defendants, under the color of state law, will unavoidably violate Plaintiffs' rights under the Establishment Clause of the First Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, and 42 U.S.C. § 1983.

## COUNT II

### VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

88.     Plaintiffs re-allege and incorporate by reference all the above paragraphs as if they were fully set forth herein.

89.     The Free Exercise Clause of the First Amendment to the United States Constitution guarantees that "Congress shall make no law … prohibiting the free exercise [of religion]."

90.     S.B. 10 and the religious displays it requires are not neutral with respect to religion. By design, S.B. 10 mandates the display of expressly religious scripture, the Ten Commandments, in every public-school classroom and, moreover, requires that a specific version of that scripture be used.

91.     The religiously discriminatory displays mandated by S.B. 10 will substantially

burden the religious exercise of the Plaintiff parents and other parents who do not subscribe to the state-sanctioned version of the Ten Commandments by interfering with, conflicting with, and usurping their ability to direct their children's religious education and religious upbringing.

92.    The displays mandated by S.B. 10 will substantially burden the religious exercise of minor-child Plaintiffs and other children who do not subscribe to the state-sanctioned version of the Ten Commandments by pressuring them to suppress or limit expression of their religious or nonreligious backgrounds, beliefs, or practices while in school to avoid the potential disfavor, reproach, and/or disapproval of school officials and/or their peers.

93.    The displays mandated by S.B. 10 will substantially burden the religious exercise of minor-child Plaintiffs and other children who do not subscribe to the state-sanctioned version of the Ten Commandments by pressuring them into observance, veneration, and adoption of the state's favored religious scripture in violation of their own religious or non-religious beliefs.

94.    By administering and implementing S.B. 10, Defendants, under the color of state law, will unavoidably violate Plaintiffs' rights under the Free Exercise Clause of the First Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, and 42 U.S.C. § 1983.

## COUNT II

### VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

95.    Plaintiffs re-allege and incorporate by reference all the above paragraphs as if they were fully set forth herein.

96.    The Free Exercise Clause of the First Amendment to the United States Constitution guarantees that "Congress shall make no law . . . prohibiting the free exercise [of religion]."

97.    S.B. 10 and the religious displays it requires are not neutral with respect to

religion.  By design, S.B. 10 mandates the display of expressly religious scripture, the Ten Commandments, in every public-school classroom and, moreover, requires that a specific version of that scripture be used.

98.    The religiously discriminatory displays mandated by S.B. 10 will substantially burden the religious exercise of the Plaintiff parents and other parents who do not subscribe to the state-sanctioned version of the Ten Commandments by interfering with, conflicting with, and usurping their ability to direct their children's religious education and religious upbringing.

99.    The displays mandated by S.B. 10 will substantially burden the religious exercise of minor-child Plaintiffs and other children who do not subscribe to the state-sanctioned version of the Ten Commandments by pressuring them to suppress or limit expression of their religious or nonreligious backgrounds, beliefs, or practices while in school to avoid the potential disfavor, reproach, and/or disapproval of school officials and/or their peers.

100.    The displays mandated by S.B. 10 will substantially burden the religious exercise of minor-child Plaintiffs and other children who do not subscribe to the state-sanctioned version of the Ten Commandments by pressuring them into observance, veneration, and adoption of the state's favored religious scripture in violation of their own religious or non-religious beliefs.

101.    By administering and implementing S.B. 10, Defendants, under the color of state law, will unavoidably violate Plaintiffs' rights under the Free Exercise Clause of the First Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, and 42 U.S.C. § 1983.

## **REQUEST FOR RELIEF**

The Plaintiffs respectfully request the following relief:

A.    An order declaring S.B. 10 to be in violation of the Establishment Clause and

B.    An order preliminarily and, thereafter, permanently enjoining the Defendants and

their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them, from adopting rules or regulations in accordance with, or otherwise enforcing, the Act, and from requiring that the Ten Commandments be displayed in every public-school classroom in Texas;

C.     An order preliminarily and, thereafter, permanently enjoining the School Board Defendants and their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them from displaying the Ten Commandments in any public-school classroom;

D.     An order directing Defendants to provide a copy of the written injunction to all Texas public elementary, secondary, and charter schools, and all public post-secondary education institutions;

E.     An award, from Defendants to Plaintiffs, of reasonable attorneys' fees and costs incurred in connection with this action, pursuant to 42 U.S.C. § 1988;

F.     An order retaining this Court's jurisdiction of this matter to enforce the terms of the Court's order; and such other relief as the Court deems just and proper.

Respectfully submitted,

KIM T. COLE
Texas State Bar No. 24071024
K. COLE LAW, PLLC
Next Generation Action Network
Legal Advocacy Fund
1808 South Good Latimer Pkwy.
Dallas, Texas 75226
(214) 702-2551 (phone)
(214) 602-5342 (fax)
kcole@kcolelaw.com
*Counsel for Plaintiffs*